### ARCHIVES OF AMERICA, INC., Appellant,

v.

### ARCHIVE LITIGATION SERVICES, INC. and Vernon Taylor, Appellees.

No. 06–98–00082–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 25, 1999.

Decided May 4, 1999.

Mike D. Gibbs, Dallas, for appellant.

Robert M. Martin, Jr., Storey & Martin, Dallas, John R. Mercy, Atchley, Russell, Waldrop, Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Archives of America provides storage for documents. Archives entered into a contract in 1988 with the Lone Star Steel Morris County toxic tort defendants, whereby Archives would "accept for storage ... such record material" as Lone Star requests, for a price set out in the contract. In 1992, Archives entered into a similar contract with CTU Corporation. Thereafter, another company, Archive Litigation Services (ALS), offered Lone Star and CTU a better price, so they canceled their contracts with Archives and entered into a business arrangement with ALS. Archives sued ALS and Vernon Taylor for tortious interference by inducing Lone Star and CTU to cancel their contracts. The trial court rendered summary judgment against Archives, and this appeal ensued. We will affirm the judgment.

Archives contends that it established by summary judgment evidence at least a fact issue that contracts between itself and Lone Star and CTU existed, and that ALS tortiously interfered with those contracts by inducing Lone Star and CTU to cancel them.

A defendant who moves for summary judgment must demonstrate that at least one essential element of the plaintiff's cause of action has been disproved, either by uncontroverted evidence or as a matter of law. *Hammonds v. Thomas,* 770 S.W.2d 1 (Tex.App.-Texarkana 1989, no writ).

A party seeking to establish tortious interference with a contract must prove four elements: (1) that a contract subject to interference exists, (2) that the alleged act of interference was willful and intentional, (3) that the willful and intentional act proximately caused damage, and (4) that actual damage or loss occurred. A

defendant may defeat a tortious interference claim on summary judgment by disproving one element of the claim as a matter of law. *Powell Indus., Inc. v. Allen,* 985 S.W.2d 455 (Tex.1998); *ACS Investors v. McLaughlin,* 943 S.W.2d 426 (Tex.1997).

■ A threshold question is whether Archives produced summary judgment evidence that it had contracts with Lone Star and CTU that were subject to interference. ALS points out that in Archives' response to the motion for summary judgment, it did not attach as summary judgment evidence any copy of any written contract with either Lone Star or CTU, until it filed an amended response after the trial court had already rendered and signed the summary judgment. Summary judgment cannot be based on any evidence not before the trial court at the time the summary judgment is rendered. TEX.R. CIV. P. 166a(c). Archives did, however, attach to its original response an affidavit by Phillip John, Archives' president. In the affidavit, John states that Archives contracted with Lone Star and CTU for the storage of documents, and he gives some details of the contract terms. In addition, he attached unsigned copies of the contract form which showed all of its terms. We conclude that this summary judgment evidence was sufficient to at least raise a fact issue on whether contracts, as alleged by Archives, had indeed been executed.

■ Archives' summary judgment evidence, however, did not show that its contracts with Lone Star and CTU were subject to interference. The contract form provides that Archives agrees to store documents as requested by the clients and that the clients agree to pay Archives certain fees if they avail themselves of that service. Although the contracts carefully delineate both the duty of the clients to pay Archives and Archives' rights in the event of nonpayment, they contain no language limiting the clients' right to move their documents to a different facility.

The contracts do not obligate either Archives or Lone Star or CTU to store documents for any period of time. They only obligate Archives to charge a specified price *if* Lone Star or CTU chooses to store documents. As there was no obligation on Lone Star or CTU to store documents for any specific time, there was no breach of the contract even if ALS induced them to move their documents to another location. Archives has not alleged that either Lone Star or CTU violated the pricing provision, which is the only obligatory provision of the contracts that is relevant to this controversy.

The contract term relating to termination provides that "this Agreement shall automatically be renewed for successive terms of three (3) months until either party shall cancel it by giving the other written notice of its election to cancel at least ninety (90) days prior to the expiration of the then existing term." It is clear that Lone Star and CTU had a contractual right to terminate their storage of documents with Archives on written notice. Written notice was given, and proof of it is a part of the summary judgment record. Although Archives contends in its brief that the contract was breached because the notice of termination was inadequate or premature, that contention was never raised in Archives' petition, its amended petition, or its response to the motion for summary judgment. That issue was therefore not before the trial court for review in the summary judgment proceeding.

Archives' claim is based on its contention that there was a breach because Lone Star and CTU moved the documents to a competing facility-not that they failed to give adequate notice before doing so. The evidence shows that ALS did induce Lone Star and CTU to move their documents from one storage facility to another, but that act is one that Lone Star and CTU had a right to take under the explicit terms of the contracts. Thus, the inducement to do what Lone Star and CTU had a

right to do did not constitute tortious interference with the contracts. *See ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d at 431; *see also C.E. Servs., Inc. v. Control Data Corp.,* 759 F.2d 1241, 1248 (5th Cir. 1985); *West Texas Gas, Inc. v. 297 Gas Co.,* 864 S.W.2d 681, 686 (Tex.App.-Amarillo 1993, no writ).

There is no allegation or summary judgment evidence that ALS induced Lone Star or CTU to violate the pricing agreement of their contracts. The trial court correctly rendered summary judgment in favor of ALS.

The judgment is affirmed.