COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-092-CV

 

 

ALL AMERICAN TELEPHONE,                                               APPELLANTS

INC., NELSON THIBODEAUX, 

JAMIE THIBODEAUX, AND 

TONY NOWIK

 

                                                   V.

 

USLD
COMMUNICATIONS, INC.                                              APPELLEES

AND QWEST SERVICES 

CORPORATION

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                            Introduction








Appellants All American Telephone, Inc. (AAT),
Nelson Thibodeaux, Jamie Thibodeaux, and Tony Nowik appeal the trial court=s orders
granting appellees USLD Communications, Inc.=s (USLD)[1]
and Qwest Services Corporation=s
(Qwest)[2]
traditional and no-evidence motions for summary judgment.  In four issues, appellants contend that the
trial court improperly excluded their summary judgment evidence and erred by
granting summary judgment for appellees on appellants= claims
for fraud, tortious interference with contract, and malicious prosecution.[3]  We affirm.








                                        Background
Facts

Appellants= and
appellees= business relationships

In 1996, Clay Garey, Tony Nowik, and Jamie
Thibodeaux formed AAT as a reseller of residential long-distance telephone
services.  These individuals comprised
AAT=s initial
board and owned equal shares in the company.[4]  Garey served as AAT=s
initial president;[5]
Nowik and Jamie Thibodeaux were not initially involved in AAT=s
day-to-day operations.

Before merging with Qwest, USLD was a
long-distance telephone company that provided services for other companies to
resell to consumers.  AAT was one of
those reselling companies.  USLD
generated call records related to AAT=s
customers= calls; it eventually forwarded
these records back to AAT through a Bulletin Board System (BBS).[6]








USLD contracted with Multimedia Long Distance,
Inc. (Multimedia), also run by Garey,[7]
which Arated@ call
records sent by USLD on AAT=s
customers to determine the amount to charge the customers for those calls.[8]  Multimedia billed AAT for the wholesale value
of the calls, and once AAT paid Multimedia, Multimedia was supposed to make its
own payments to USLD.  USLD=s
contract with Multimedia provided that if Multimedia failed to properly pay
USLD, USLD could terminate its services to Multimedia.[9]








Once the calls had been Arated@ by
Multimedia, AAT used a company named Hold Billing Services (Hold) to collect
payment from AAT=s customers.[10]  Hold advanced funds to AAT based on
long-distance calls made by AAT=s
customers, and then Hold sent monthly bills to AAT=s
customers for those calls through the customers= local
telephone companies.  After receiving
payment for the long-distance telephone services from the customers= local
companies, Hold reconciled amounts it had advanced to AAT with the actual money
it had collected.

To minimize the risk that it might not receive
payment equal to the advances it had made to AAT, Hold obtained a security
agreement from AAT that attached to AAT=s
accounts and its customer base.  The
security agreement allowed Hold, upon default, to require AAT to deliver all of
its books and records relating to its customers; it also allowed Hold to Atake
control of all . . . payments on [AAT=s
accounts] and apply them against the obligation.@ 

The trial court=s
proceedings 

In 1998, USLD began to allege that Multimedia
owed it more than $2 million for its long-distance services.  After Garey informed Nowik and Jamie
Thibodeaux of this allegation and of AAT=s
potential responsibility to pay the money, they demanded to view AAT=s
records.








Garey refused to give access to the records and
stopped communicating with Jamie Thibodeaux and Nowik; thus, in June 1998, AAT,
Jamie Thibodeaux, and Nowik filed their original petition against Garey.  Around that same time, because AAT did not
agree to pay Multimedia=s debts, USLD blocked Multimedia=s (and
therefore AAT=s) access to the BBS.  However, according to Nelson Thibodeaux, USLD
continued to forward call records to Garey for rating and billing.

In their June 1998 petition, appellants[11]
sought a temporary restraining order to prevent Garey from altering AAT=s
records or distributing AAT=s
assets; they also sought immediate access to the records and damages for Garey=s
alleged misconduct.[12]  Appellants obtained a temporary restraining
order against Garey; however, Garey obtained a temporary restraining order
prohibiting appellants from changing AAT=s
records or disposing of AAT=s funds.








In July 1998, USLD intervened in appellants= suit
against Garey to collect the more than $2 million allegedly owed to it by AAT.[13]  The intervention petition named Nelson
Thibodeaux as a third-party defendant; it also requested the trial court to
appoint a receiver to take possession of AAT=s assets
because of the Aunrest and chaos@ caused
by the countervailing temporary restraining orders.

The same month that USLD filed its intervention
petition, appellants and Garey entered into a settlement agreement in which AAT
assumed all of Multimedia=s liabilities to USLD and also
assumed Multimedia=s contract with USLD.[14]  The settlement agreement caused the
resignation of Garey as AAT=s
president and Jamie Thibodeaux=s and
Nowik=s purchases
of Garey=s AAT
shares for $270,000.

Also in July 1998, the Federal Communications
Commission (FCC) issued a Notice of Apparent Liability for Forfeiture (for more
than $1 million) against AAT.  The FCC
alleged that AAT had committed Aparticularly
egregious@ violations of federal law by
changing the long-distance services of thirteen customers without their
permission through forging those customers=
signatures on Letters of Authorization (LOAs).[15]  In the summer of 1998, the government seized
most of AAT=s files under a warrant.








In August 1998, Hold=s
counsel sent appellees= counsel a letter  asserting that AAT owed Hold more than
$750,000, noting that appellees were holding AAT=s call
records because of appellees= dispute
with AAT and, under Hold=s security agreement with AAT,
demanding Aimmediate delivery to [Hold] of
all call records whatsoever attributable to AAT or its customers.@[16]  Following appellees= receipt
of that letter, they and Hold entered into a Release and Indemnity
Agreement.  The agreement recited that
Hold had asserted a claim to AAT=s call
records and that Hold had warranted that their claim was superior to claims of
other entities, including AAT.  It then
provided that appellees would deliver AAT=s call
records to Hold and that Hold would collect money on AAT=s
accounts.








In September 1999, the federal government filed
mail fraud charges against Patrick Thompson (AAT=s vice
president and chief financial officer at that time), alleging that Thompson led
AAT in a scheme to Adefraud telephone customers
. . . by means of false, fictitious, and fraudulent pretenses,@ such as
deceptive sweepstakes[17]
used to change customers= long-distance services to
AAT.  Thompson pled guilty and signed a Afactual
resume@ in
which he admitted to taking these actions and defrauding approximately 350,000
customers.

In February 2001, the federal government indicted
Garey for charges similar to those that Thompson had pled guilty to.  In May 2002, the government indicted Nelson
Thibodeaux, Nowik, and others connected to AAT=s
business for similar crimes.[18]  In November 2002, a jury trial began on the
criminal case against Nowik and Thibodeaux; they were both acquitted.








In November 2003, through a fax from appellees=
counsel, appellants discovered the existence of the agreement between USLD and
Hold regarding Hold=s execution of its security
agreement on AAT=s accounts.  USLD had not produced the agreement to
appellants or to prosecutors[19]
before Nowik=s and Thibodeaux=s trial.

In December 2003, appellants amended their
petition to assert claims against USLD.[20]  In May 2004, USLD filed its motion for
summary judgment on AAT=s claims against it.  In that motion, USLD particularly alleged
that AAT had no evidence to prove elements of their fraud and tortious
interference with contract claims.

In July 2004, AAT filed its objections[21]
and its response to USLD=s motion for summary
judgment.  AAT attached deposition
excerpts and affidavits from Garey and Thibodeaux.  It contended that fact issues precluded
summary judgment on its tort claims.








Appellees filed objections to the evidence
appellants had attached to their summary judgment response.  Specifically, appellees objected to Garey=s and
Thibodeaux=s affidavits (and exhibits
attached to those affidavits), asserting that the affidavits lacked foundation,
contained inadmissible hearsay and vague statements, and were not based on
personal knowledge.

In January 2005, Qwest filed its motion for
summary judgment, contending in part that appellants had no evidence to support
three elements of their malicious prosecution claim.  In February 2005, appellants filed their
fourth amended petition[22]
against Garey, Multimedia, and appellees. 
That petition stated that AUSLD led
AAT to believe that it would continue providing services to AAT customers
provided AAT would pay for services due and attributable to the business of
AAT,@ claimed
that USLD prohibited AAT from accessing call records, asserted that USLD and
Hold conspired to prevent the release of AAT=s call
records, and alleged that USLD Astole
AAT=s
customer base.@ 
Finally, it contended that USLD portrayed itself as a victim of fraud to
federal prosecutors, resulting in Nowik=s and
Thibodeaux=s prosecutions.








On April 5, 2005, appellants filed their response
to Qwest=s
summary judgment motion.  As to
appellants= malicious prosecution claim,
the response argued that there was a Acourse
of communication between USLD and the United States Attorney=s Office
beginning in at least June 1999A wherein
USLD portrayed itself as a victim to AAT=s
allegedly fraudulent billings in 1998 (at which time appellants had no control
over AAT=s
customers or its billing).

On April 28, 2005, the trial court granted USLD=s
traditional motion for summary judgment and also its no evidence motion for
summary judgment on AAT=s fraud and tortious
interference with contract claims, among other claims.  The trial court concurrently sustained two of
appellants= objections to USLD=s
summary judgment motion, and it sustained all of the objections that USLD had
made to portions of appellants= summary
judgment evidence.[23]

In July 2005, the trial court stayed its
proceedings because AAT filed a bankruptcy petition in federal court.  After the trial court resumed its case more
than two years later, in October 2007, USLD and Qwest jointly filed a motion
for summary judgment on appellants= remaining
claims against them.








In January 2008, the trial court granted
appellees= motion for summary judgment on
appellants= malicious prosecution
claim.  The next month, the court severed
all of appellants= claims against appellees from
the claims remaining in the suit.[24]  Appellants timely filed notice of this
appeal.

                         Summary
Judgment Standards of Review

General summary judgment principles

We review summary judgments de novo.  Gray v. Nash, 259 S.W.3d 286, 289
(Tex. App.CFort Worth 2008, pet.
denied).  The function of summary
judgment practice is not to deprive a litigant of the right to a jury trial,
but to eliminate patently unmeritorious claims and untenable defenses.  Gulbenkian v. Penn, 151 Tex. 412, 416,
252 S.W.2d 929, 931 (1952). 
Summary judgment is proper when parties do not dispute the relevant
facts.  Havlen v. McDougall, 22
S.W.3d 343, 345 (Tex. 2000).

When a party moves for summary judgment on
no-evidence and on traditional grounds, we will first review the trial court=s
judgment under the no-evidence standards. 
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If an appellant failed to produce more than a
scintilla of evidence under those standards, then there is no need to analyze
whether an appellee=s summary judgment proof
satisfied the burden related to traditional summary judgment motions.  Id.








No-evidence summary judgment motions

After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; see Johnson v. Brewer & Pritchard, P.C., 73
S.W.3d 193, 207 (Tex. 2002).  The trial
court must grant the motion unless the nonmovant produces summary judgment
evidence that raises a genuine issue of material fact.  See Tex. R. Civ. P. 166a(i); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no-evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).








Less than a scintilla of evidence exists when the
evidence is so weak that it does nothing more than create a mere surmise or
suspicion of a fact.  Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists when
the evidence would enable reasonable and fair-minded people to reach different
conclusions.  See Hamilton v. Wilson,
249 S.W.3d 425, 426 (Tex. 2008); Ford Motor Co., 135 S.W.3d at 601.

           The
Propriety of the Trial Court=s
Summary Judgment Orders

In their third and fourth issues, appellants
assert that the trial court erred by granting appellees=
no-evidence summary judgment motions on their fraud, tortious interference with
contract, and malicious prosecution claims.

Fraud

In the first part of their third issue,
appellants argue that the trial court erred by granting appellees=
no-evidence summary judgment motions on their fraud claims.








A party commits fraud by (1) making a false,
material misrepresentation (2) that the party either knows to be false or
asserts recklessly without knowledge of its truth (3) with the intent that the misrepresentation
be acted upon, (4) and the person to whom the misrepresentation is made acts in
reliance upon it (5) and is injured as a result.  W.L. Lindemann Operating Co. v. Strange,
256 S.W.3d 766, 776 (Tex. App.CFort
Worth 2008, pet. denied); see Formosa Plastics Corp. USA v. Presidio Eng=rs and
Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998) (op. on reh=g).  In its motion for summary judgment filed in
May 2004, USLD asserted that AAT had no evidence of any of these elements.

Appellants claim that appellees committed fraud
by falsely representing that they would continue to provide services to AAT
pending reconciliation of AAT=s
account with USLD.  Appellants rely on
Thibodeaux=s affidavit that they attached
to their summary judgment response, which contained the statement, 

AAT was willing at all times to pay any and all toll charges directly
to USLD provided it had not already paid the same to MULTIMEDIA.  During discussions with USLD representatives
concerning the amounts attributable to AAT=s un-billed and undelivered call records, and
prior to USLD notifying that it was terminating its relationship with AAT, AAT
was inexplicably denied access to the [BBS]. 
The BBS is the lifeline to any reseller as it enables a reseller to
determine who its existing customers are. 
I was not particularly concerned at that time because USLD, by and
through its attorneys and representatives, continued to assure us that AAT
would continue to be serviced by USLD pending a reconciliation [of] AAT=s account.  I, as a representative of AAT, relied upon
this representation and took no action to solidify the identity of [the]
current customer base for the purpose of moving the same to another carrier,
locate another carrier, or locate another billing company because I was
confident the business relationship would continue based on the representations
of USLD.  [Emphasis added.]

 








Appellees claim that Thibodeaux=s
statement is insufficient to raise any genuine fact issue on appellants= fraud
claim because (1) it is vague and lacks sufficient foundation (because it does
not state when the statement was made or who made it); (2) it is, at most, a
promise of future performance with no evidence of a present intention not to
perform; and (3) AAT could not have reasonably relied on the statement because
Multimedia=s agreement with USLD (for which
AAT assumed responsibility through its settlement agreement with Garey) allowed
USLD to withhold services if it was not paid.

The foundation for Thibodeaux=s
statement

In the trial court, appellees specifically
objected to the portion of Thibodeaux=s
affidavit that is italicized above.  They
argued,

These statements are not
readily controvertible because they are too vague to even determine who at USLD
allegedly made the statements.  Nor are
these statements supported by a shred of documentary evidence . . . .  They do not identify the speaker, the content
of the alleged representations and assurances, or even the person to whom they
were made.  Nor does Thibodeaux ever do
so in his affidavit. . . . [The statements] do not meet the standards for
summary judgment evidence and should be disregarded.

 

The trial court sustained appellees=
objection and specifically excluded the italicized portion from its
consideration.  Appellants contend that
the court=s exclusion of the statement was
improper.








Inclusion or exclusion of summary judgment
evidence is a matter committed to the trial court=s
discretion.  United Blood Servs. v.
Longoria, 938 S.W.2d 29, 30 (Tex. 1997). 
We review a trial court=s ruling
sustaining or overruling objections to summary judgment evidence for an abuse
of that discretion.  Paciwest, Inc. v.
Warner Alan Props., LLC, 266 S.W.3d 559, 567 (Tex. App.CFort
Worth 2008, pet. denied); Reynolds v. Murphy, 188 S.W.3d 252, 259 (Tex.
App.CFort
Worth 2006, pet. denied) (op. on reh=g), cert.
denied, 549 U.S. 1281 (2007).

To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986); see Longoria, 938
S.W.2d at 31.  Merely because a trial
court may decide a matter within its discretion in a different manner than an
appellate court would in a similar circumstance does not demonstrate that an
abuse of discretion has occurred.  Downer,
701 S.W.2d at 242.  Under the abuse of
discretion standard, an appellate court should Auphold
the trial court=s evidentiary ruling if there is
any legitimate basis in the record for the ruling.@  Reynolds, 188 S.W.3d at 259; see
Owens‑Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.
1998).  Affidavits in support of summary
judgment must set forth such facts as would be admissible in evidence at
trial.  Tex. R. Civ. P. 166a(f); Longoria,
938 S.W.2d at 30.








In Brownlee v. Brownlee, the Texas Supreme
Court considered Barbara Brownlee=s motion
for summary judgment on her claim for a breach of a settlement agreement
connected to the divorce of her ex-husband, Michael.  665 S.W.2d 111, 111 (Tex. 1984).  In opposition to the motion, although Michael
admitted the existence of the settlement agreement and his failure to make
payments thereunder, he submitted an affidavit that contained a  general statement that the agreement had been
amended.  Id. at 112.  He contended that the general statement
regarding amendment was sufficient to raise a fact issue and avoid summary
judgment.  Id.  The supreme court disagreed, holding that
Michael=s

affidavit did not set
forth such facts as would be admissible in evidence, as required by Rule 166‑A(e),
TEX. R. CIV. P.  If this had been a trial
on the merits and the only thing to which Michael testified was that his
obligation had been modified, the trial court would have been required to
instruct a verdict against him. Michael=s affidavit opposing Barbara=s motion for summary
judgment should have gone further and specified factual matters such as the
time, place, and exact nature of the alleged modification.

 

Id. (emphasis added). 








Similarly, in Fraga v. Drake, Fraga, who
had purchased a home that subsequently needed substantial repairs, appealed a
summary judgment on his fraud claim that was granted in favor of the home=s
sellers.  276 S.W.3d 55, 58 (Tex. App.CEl Paso
2008, no pet.).  The trial court
sustained objections to portions of Fraga=s
summary judgment evidence that he attached to his response.  Id. at 59B61.  Particularly, the trial court excluded a
portion of Fraga=s affidavit stating, AThen,
when I was not making the monthly note payments [on the home] because they told
me I could use the money for the repairs instead, and they made their
confession to me in February 2002, I then filed suit.@  Id. at 61, 63.  On appeal, Fraga contended that the
trial court abused its discretion by excluding the statement.  Id. at 59B60.  In rejecting Fraga=s
contention, the El Paso court explained that the sellers

objected to [the statement]
on the grounds that it failed to specify which defendant made what statement,
it failed to state the alleged Aconfession,@ and it was conclusory.  As was the case with [a previously-excluded
statement], the affidavit does not set forth the statements made by the
defendants which Fraga characterizes as a confession.  This statement is conclusory because it does
not relate the underlying facts which support the conclusion.  The trial court did not abuse its discretion
i[n] sustaining [the sellers=] objections to [the statement].

 

Id. at 63.

Finally, in Wilson v. Thomason Funeral Home,
Inc., the Austin court of appeals reviewed a trial court=s
decision to grant summary judgment against a family=s fraud
claim related to a funeral home=s
allegedly deficient preparation of a body for a viewing.  No. 03‑02‑00774‑CV,
2003 WL 21706065, at *1B2, 7B9 (Tex.
App.CAustin
July 24, 2003, no pet.) (mem. op. on reh=g).  To support the reliance element of their
fraud claim, the family relied solely on an affidavit from one of the family
members that stated,








I was present when my
wife=s body was first made
available for viewing by the family.  A
representative from Thomason Funeral Home told us that, because of the
procedure, they had trouble with my wife=s eyes. 
Because Thomason led me to believe that they had done all they could do
for my wife=s eyes, I did not
complain.  I paid for the services
provided by Thomason Funeral Home because it was my understanding based on
Thomason Funeral Home representative=s implication to me that they had done the best
job they could given the procedure.  Had
I been told either that my wife=s eyes had been completely removed, or that
Thomason had breached any standard of care with respect to preparing my wife=s body for burial, I
never would have gone through with the contract. 

 

Id. at *8. 
The Austin court rejected the affidavit=s
capability to defeat the funeral home=s
no-evidence summary judgment motion on the family=s fraud
claim, reasoning that an

affidavit must set forth
such facts as would be admissible at a conventional trial on the merits[.]  Here, the only representation, as set forth
in the affidavit, is that an unnamed Thomason representative had difficulty
with the eyes Abecause of the procedure.@ The affidavit implies
that a Thomason representative said that he did all that he could, but does not
unequivocally aver that anyone with Thomason made the statement.  This does Ano more than create a mere surmise or suspicion@ of fact, which is less
than a scintilla of evidence. . . .  The
allegations concerning statements of an unidentified representative of Thomason
are insufficient to create a fact issue because they lack the necessary factual
specificity and create no more than a suspicion of fact.

 

. . .
.

 

Because the affidavit lacks sufficient factual specificity about
Thomason=s representations [and]
creates no more than Aa mere surmise or
suspicion of fact,@
. . . appellants have not presented more than a scintilla of
evidence on [their fraud claim].








Id. at *8B9
(citations omitted) (emphasis added); see also Southtex 66 Pipeline Co. v.
Spoor, 238 S.W.3d 538, 542B43 (Tex.
App.CHouston
[14th Dist.] 2007, pet. denied) (explaining that Aan
affidavit must contain specific factual bases, admissible in evidence and upon
which conclusions are drawn. . . . 
Statements made in the affidavit need factual specificity such as time,
place, and the exact nature of the alleged facts@)
(citations omitted); B & H Aircraft Sales, Inc. v. Engine Components,
Inc., 933 S.W.2d 653, 656 (Tex. App.CSan
Antonio 1996, no writ) (affirming the trial court=s
decision to grant summary judgment because, in part, an affidavit was not
specific enough to raise a fact issue); Princess Enters., Inc. v. Superstar
Amusements, Inc., 718 S.W.2d 40, 43 (Tex. App.CDallas
1986, no writ) (indicating that a plaintiff in a fraud claim must Alay a
foundation outlining exactly what specific representations were made and relied
upon@).








 We find
these cases instructive about our decision in this case.  Thibodeaux=s
statement in his affidavit (as italicized above) generally communicates only
that someone out of a number of attorneys and representatives from USLD told
someone out of a number of people connected to AAT that AAT would Acontinue
to be serviced@ pending a Areconciliation@ of AAT=s
account.  The affidavit does not provide
any detail as to the particular identity of the speaker or who heard the
statement, does not provide any detail as to when in the course of USLD=s
dispute and negotiations with AAT the statement was made, and does not provide
any detail concerning the specific statement that was made and what, if any,
conditions attached to the Areconciliation@ of AAT=s
account.








Because the impetus behind a fraud claim is a
specific and false representation, because summary judgment affidavits require
detail and specificity, and because Thibodeaux=s
statement lacks any such specificity as to USLD=s
alleged representation, we hold that the trial court did not abuse its
discretion by striking the italicized portion of his affidavit detailed above,
as it created only a Asurmise or suspicion@ of the
matters it asserted.[25]  See Tex. R. Civ. P. 166a(f); Brownlee,
665 S.W.2d at 111B12; Fraga, 276 S.W.3d at
63; Paciwest, Inc., 266 S.W.3d at 567; Strange, 256 S.W.3d at
776.  Since appellants rely solely on
Thibodeaux=s statement to support the false
representation element of their fraud claim and because we hold that the trial
court did not err in excluding the statement, we also hold that the trial court
did not err in granting the no-evidence summary judgment motion for appellees
on that claim.  See Tex. R. Civ.
P. 166a(i); Grant, 73 S.W.3d at 215. 
We therefore overrule the portion of appellants= third
issue that corresponds to the trial court=s
decision to grant summary judgment against them on their fraud claim.[26]

Tortious interference with contracts 

In the remaining part of their third issue,
appellants contend that the trial court improperly granted appellees=
no-evidence summary judgment motions on their tortious interference with
contract claims.

Texas law protects existing contracts from
interference.  See Juliette Fowler
Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 665B66 (Tex.
1990).  Thus, a party to a contract has a
cause of action for tortious interference against any nonparty to the contract
who wrongly induces another contracting party to breach the contract.  Holloway v. Skinner, 898 S.W.2d 793,
794B95 (Tex.
1995).








The elements of the cause of action for tortious
interference are:  (1) the existence of a
contract subject to interference, (2) willful and intentional interference (3)
that proximately causes damage, and (4) actual damage or loss.  ACS Investors, Inc. v. McLaughlin, 943
S.W.2d 426, 430 (Tex. 1997); SITQ E.U., Inc. v. Reata Rests., Inc., 111
S.W.3d 638, 647 n.7 (Tex. App.CFort
Worth 2003, pet. denied).  USLD asserted
in the trial court that AAT had no evidence to support any of these elements.

Appellants contend that USLD interfered with AAT=s
contracts with its customers by (1) delivering AAT=s call
records to Hold instead of permitting AAT to access the records so that it
could identify its customers, and (2) switching some of AAT=s
customers off of AAT=s account without its
permission.  Appellees assert that
appellants= summary judgment evidence is
too vague and conclusory to support appellants=
claim.  We agree with appellees.








Thibodeaux=s
affidavit, on which appellants again rely on appeal to substantiate their
tortious interference claim, states that in 1998, AAAT had
contracts to provide long distance services with over one million (1,000,000)
customers. . . .  AAT would acquire
customers via a third-party marketing company, customers would be switched to
the USLD network, [and] call records would be forwarded weekly from USLD to AAT
via the [BBS] or tape.@ 
Beyond generally stating that a million contracts existed, the affidavit
does not provide any further detail as to specific terms or even the general
legal effect of such contracts, nor does it attach any executed or nonexecuted
contract to serve as an exemplar of such contracts=
provisions.

For a plaintiff to maintain a tortious
interference claim, it must produce some evidence that the defendant knowingly
induced one of the contracting parties to breach its obligations under a
contract.  See John Paul Mitchell Sys.
v. Randalls Food Mkts., Inc., 17 S.W.3d 721, 730 (Tex. App.CAustin
2000, pet. denied); Davis v. HydPro, Inc., 839 S.W.2d 137, 139B40 (Tex.
App.CEastland
1992, writ denied); see also Dunn v. Calahan, No. 03‑05‑00426‑CV,
2008 WL 5264886, at *3 (Tex. App.CAustin
Dec. 17, 2008, pet. denied) (mem. op. on reh=g)
(explaining that there Amust be some act interfering
with a contract or act persuading a party to a contract to breach; for example,
offering better terms or other incentives@).  To do so, the plaintiff must present evidence
that some obligatory provision of a contract has been breached.  See N.Y. Life Ins. Co. v. Miller, 114
S.W.3d 114, 125 (Tex. App.C Austin
2003, no pet.) (rendering judgment against a tortious interference claim
because there was no breach of the underlying contract); Archives of Am.,
Inc. v. Archive Litig. Servs., Inc., 992 S.W.2d 665, 667B68 (Tex.
App.CTexarkana
1999, pet. denied).








When the plaintiff fails to present such
evidence, summary judgment against the tortious interference claim is
proper.  See Stephan v. Baylor Med.
Ctr. at Garland, 20 S.W.3d 880, 891 (Tex. App.CDallas
2000, no pet.).  General claims of
interference with a business relationship are insufficient to establish a
tortious interference with contract claim. 
See Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.,
202 S.W.3d 250, 265 (Tex. App.CCorpus
Christi 2006, pet. denied); see also Coca‑Cola Co. v. Harmar Bottling
Co., 218 S.W.3d 671, 690 (Tex. 2006) (signaling that tortious interference
with a contract and tortious interference with a business relationship are
separate torts).








While the summary judgment evidence indicates
that AAT had customers and Thibodeaux=s
affidavit generally asserts that AAT had contracts with those customers,
appellants did not produce any evidence that appellees=
delivery of AAT=s call records to Hold or its
switching of AAT=s customers=
telephone service violated any particular term of those contracts or caused
either AAT or the customers to breach the contracts.  Instead, the allegations in appellants= brief
and their reply brief focus on the business relationship that AAT had with its
customers, rather than the contracts it had with them.[27]  While appellants assert in their reply brief
that appellees= conduct Anecessarily
interfered with AAT=s contractual right to receive
payment from its customers,@ the
summary judgment evidence fails to establish beyond any surmise or suspicion
that any such right was contractual in nature.[28]  See Kindred, 650 S.W.2d at 63.








Thus, we hold that the evidence offered by
appellants in the trial court failed to raise any genuine issue of material
fact that appellees interfered with any contract that was subject to such
interference and that the trial court properly granted appellees= motion
against appellants= tortious interference claim.[29]  See Stephan, 20 S.W.3d at 891; John
Paul Mitchell Sys., 17 S.W.3d at 730; ACS Investors, Inc., 943
S.W.2d at 430.  We therefore overrule the
portion of appellants= third issue that relates to
their tortious interference claim.

Malicious prosecution

In their fourth issue, appellants assert that the
trial court erred by granting appellees= summary
judgment motions on Nowik=s and Thibodeaux=s
malicious prosecution claims.








 Claims for
malicious prosecution create a tension between the societal interest in
punishing crimes and the individual interest in protection from unjustifiable
criminal prosecution; we are therefore constrained to the exact prerequisites for
liability when reviewing such claims.  Richey
v. Brookshire Grocery Co., 952 S.W.2d 515, 520 (Tex. 1997); Browning‑Ferris
Indus., Inc. v. Lieck, 881 S.W.2d 288, 293 (Tex. 1994).  To prevail on a malicious prosecution claim,
a plaintiff must establish (1) the commencement of a criminal prosecution
against the plaintiff, (2) causation of the action by the defendant, (3)
termination of the prosecution in the plaintiff=s favor,
(4) the plaintiff=s innocence, (5) the absence of
probable cause for the proceedings, (6) malice in filing the charge, and (7)
damage to the plaintiff.  Richey,
952 S.W.2d at 517; Dangerfield v. Ormsby, 264 S.W.3d 904, 910 (Tex. App.CFort
Worth 2008, no pet.).  Appellees moved
the trial court for a no-evidence summary judgment on the ground that
appellants had no evidence of causation; appellees maintain this contention on
appeal.

For a plaintiff to show that a defendant caused a
malicious prosecution, it must demonstrate that the defendant initiated or
procured the prosecution.  See Lieck,
881 S.W.2d at 292B93; Dangerfield, 264
S.W.3d at 910.  A defendant initiates a
prosecution when it files formal charges against the plaintiff.  See Lieck, 881 S.W.2d at 293; Dangerfield,
264 S.W.3d at 910.  A defendant procures
a prosecution when its 

actions were enough to
cause the prosecution, and but for [its] actions the prosecution would not have
occurred.  [The defendant] does not
procure a criminal prosecution when the decision whether to prosecute is left
to the discretion of another, including a law enforcement official or the grand
jury, unless the person provides information which he knows is false.

 

Lieck, 881 S.W.2d at 293; see Dangerfield, 264
S.W.3d at 910 (explaining that to establish procurement, the defendant=s desire
must be the Adetermining factor in the
official=s
decision to commence the prosecution@).








Thus, Aproof
that a complainant has knowingly furnished false information is necessary for
liability when the decision to prosecute is within another=s
discretion.  But such proof is not sufficient.@  King v. Graham, 126 S.W.3d 75, 76
(Tex. 2003).  Instead, Athere
must be proof that the prosecutor acted based on the false information and that
but for such false information the decision [to prosecute] would not have been
made.@  Id. 
Therefore,

a person who knowingly
provides false information to the grand jury or a law enforcement official who
has the discretion to decide whether to prosecute a criminal violation cannot
be said to have caused the prosecution if the information was immaterial to the
decision to prosecute.  If the decision
to prosecute would have been made with or without the false information, the
complainant did not cause the prosecution by supplying false information.

 

Id. at 78; see First Valley Bank of Los Fresnos
v. Martin, 144 S.W.3d 466, 470 (Tex. 2004). 
The plaintiff is not required to present direct evidence such as
testimony from a prosecutor to establish causation in a malicious prosecution
claim.  See In re Bexar County
Criminal Dist. Attorney=s Office, 224
S.W.3d 182, 186 (Tex. 2007) (orig. proceeding).

Appellants do not assert that appellees initiated
Nowik=s and Thibodeaux=s
prosecutions by filing a formal complaint. 
Instead, appellants assert that appellees procured the prosecutions by
providing false information and withholding material information from the
government.








Specifically, in appellants= most
recent petition, they alleged that appellees maliciously prosecuted them by
stating, AAs a further tool used to
attempt to overwhelm AAT shareholders, USLD representatives contacted the
United States Attorney=s office and portrayed USLD as a
victim of some scheme to defraud.  These
allegations were false and malicious.@  In their summary judgment responses at trial
and in their briefs on appeal, appellants have specified that their malicious
prosecution claim is based on (1) USLD=s
counsel Robert Barbee=s speaking with assistant United
States attorney Ronald Eddins in 1999, (2) Barbee=s
forwarding Eddins a copy of USLD=s
intervention petition that contained allegedly untrue statements and portrayed
USLD as a victim, (3) Barbee=s
arranging an interview between a USLD employee and Eddins,[30]
and (4) Barbee=s nondisclosure to Eddins or AAT
(despite AAT=s written discovery request) of
USLD=s
agreement with Hold, which would have shown Eddins that AAT did not have
control of its billings in the time period relevant to Eddins=s
prosecution decision.








Assuming that the details underlying each of
these assertions about USLD=s and
Barbee=s
actions are true, appellants still failed to present more than a scintilla of
evidence that Nowik and Thibodeaux would not have been prosecuted without such
actions; they failed to explain how the reversal of USLD=s
actions would have signaled their exculpation to Eddins.  While appellants= brief
contains a conclusory statement that USLD=s
alleged misrepresentations Adrove
the Justice Department into an unwarranted prosecution of Thibodeaux and Nowik,@ it does
not explain how the alleged misrepresentations were the Abut-for@ cause
of the particular charges that Thibodeaux and Nowik faced in their indictment
and in their federal criminal trial.  See
King, 126 S.W.3d at 78.

Appellants= summary
judgment response to Qwest=s motion
for summary judgment on their malicious prosecution claims, on which appellants
rely through a record reference in the portion of their brief concerning this
causation issue, did not include a copy of the indictment against Nowik and
Thibodeaux or any of the filings in their criminal case.  It also did not include a transcript from
their trial or any other document to establish the foundation of the government=s
prosecution against them or directly or circumstantially indicate that the
government=s case would have been weakened
if USLD had acted differently.













Although Thibodeaux=s and
Nowik=s
affidavits included broad, one-sentence assertions about the nature of the
charges against them,[31]
appellants= summary judgment response also
included as evidence a June 8, 1999 letter from Eddins to Barbee (although his
name is misspelled as ABarkee@) indicating
that Eddins received information apart from USLD=s
information in his prosecution of Nowik and Thibodeaux.[32]  See King, 126 S.W.3d at 79 (A[The
plaintiffs] argue in essence that causation can be inferred from the falsity of
[the defendant=s] statements.  While such an inference might be drawn in
a case in which the only information the official relied on in deciding to
prosecute was false, that is not the situation in this case.@)
(emphasis added); see also Weaver v. Bell, No. 03‑04‑00169‑CV,
2005 WL 1364046, at *6 (Tex. App.CAustin
June 10, 2005, no pet.) (mem. op.) (holding that the plaintiff did not procure
the defendant=s prosecution because, in part,
the evidence showed that police investigated and interviewed other witnesses
before deciding to arrest the plaintiff). 
Appellants= summary judgment response at
trial also contained documents filed in Patrick Thompson=s
criminal case relating that the government was concerned about AAT=s
activities that occurred as far back as 1996, which was well before USLD=s
asserted cooperation with the government.

We conclude and hold that the isolated, general
statements in Nowik=s and Thibodeaux=s
affidavits regarding the substance of the charges against them, when considered
with the remainder of their summary judgment evidence and when viewed in the
light most favorable to them, do not create more than a surmise or suspicion
that the absence of USLD=s statements and the disclosure
of USLD=s
agreement with Hold would have changed the government=s
prosecution decision.  See King,
126 S.W.3d at 78; Kindred, 650 S.W.2d at 63 (explaining that when Athe
evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence, the evidence is no more than a
scintilla and, in legal effect, is no evidence@); Hubbard
v. Shankle, 138 S.W.3d 474, 480 (Tex. App.CFort
Worth 2004, pet. denied).








Finally, appellants rely on a portion of Nelson
Thibodeaux=s deposition testimony to
establish causation for their malicious prosecution claims.  When asked during his deposition to explain
the connection between USLD=s
actions and his indictment, Thibodeaux stated, 

I spoke to the U.S.
Postal Inspector after this was over. 
He indicated to me had he have known [USLD] was the one solely
involved with customers on line after 1998, that it may have changed his
mind about recommendations to the Assistant U.S. Attorney . . . . 

 

. . . .

 

So sir, I was indicted through 1999. 
And, once again, since we went out in September of >98 because of your
actions here and Hold=s actions, I don=t see how we could have
been indicted through >99 unless you, sir, or
your company or somebody were billing customers and the U.S. Attorney=s Office thought we were
still somehow or another involved in some nefarious activities, because we
couldn=t control who was being
billed.  We had no idea.

 

So when you refer to yourself as a victim and the U.S. Attorney
believes that, then I think it helped motivate his indictment, and I
believe the U.S. Postal Inspector feels that way, as well.  [Emphasis added.]

 








In King, a criminal investigator with a
sheriff=s
department named Alford reported the facts of his investigation to Sutton, the
district attorney.  King, 126
S.W.3d at 77.  After the grand jury
indicted the plaintiffs for theft, Sutton spoke with their counsel and he
dismissed their charges.  Id.  The trial court directed a verdict in favor
of the plaintiffs, based in part on Alford=s
testimony that knowing that defendant=s
statements were false could possibly have influenced his investigation.  Id. at 77, 79.  In reversing the trial court=s
judgment and rendering judgment for the defendant on the basis that the
plaintiffs did not establish causation, the supreme court explained that Alford
Adid not
testify that he would have recommended against prosecution or that Sutton would
have followed that recommendation.@  Id. at 79.

Similarly, in this case, the postal inspector did
not tell Thibodeaux that he would have recommended against prosecution or that
the federal prosecuting attorney would have followed that recommendation; the
inspector said only that USLD=s
disclosure of its agreement with Hold Amay have@ changed
his recommendation.  Thus, as in King,
we conclude that the postal inspector=s
statement is insufficient to provide evidence of causation.

For all of these reasons, we hold that appellants
failed to submit more than a scintilla of evidence in response to appellees=
no-evidence motion to establish that Thibodeaux and Nowik would not have been
prosecuted apart from appellees=
involvement in their criminal cases, which is an element of their malicious
prosecution claims.  See King, 126
S.W.3d at 78B79; Dangerfield, 264
S.W.3d at 910.  Therefore, we overrule
their fourth issue, which relates to the trial court=s order
granting summary judgment for appellees on that claim.

 








                                 Appellants=
Remaining Issues

Appellants= first
and second issues assert that the trial court erred by striking portions of AAT=s
summary judgment evidence and by granting appellees=
traditional motions for summary judgment. 
Because we hold that appellees are entitled to judgment on appellants= three
remaining claims (fraud, tortious interference with contract, and malicious
prosecution) for reasons unrelated to the trial court=s
evidentiary decision discussed in appellants= first
issue and appellees= traditional summary judgment
grounds discussed in appellants= second
issue, we decline to address those two issues. 
See Tex. R. App. P. 47.1; Hawkins v. Walker, 233 S.W.3d
380, 395 n.47 (Tex. App.CFort Worth 2007, pet. denied);
Luxury Travel Source v. Am. Airlines, Inc., 276 S.W.3d 154, 166 n.10 (Tex.
App.CFort
Worth 2008, no pet.).

                                             Conclusion

Having overruled appellants= third
and fourth issues, which are dispositive of their claims on appeal, we affirm
the trial court=s judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, GARDNER, and WALKER, JJ.

 

DELIVERED:  July 9, 2009











[1]USLD=s full business name is
United States Long Distance, Inc. 
Because the parties use the USLD moniker in their briefs, we will do the
same in this opinion.





[2]USLD merged with Qwest.  All parties in this appeal have equated Qwest=s liability with USLD=s liability for the
claims appellants have alleged against USLD.





[3]Appellants pled a number
of other claims against appellees in their most recent petition filed in the
trial court.  Although many of these
claims were not resolved by any specific summary judgment order, all parties
have asserted that a severance order incorporating finality language serves to
make the two distinct summary judgment orders that were signed before the
severance order final and appealable. 
Because the trial court purported to dispose of all claims between
appellants and appellees and because appellants have limited their criticism of
the trial court=s disposition to their
fraud, tortious interference with contract, and malicious prosecution claims, we
will limit our analysis of the trial court=s summary judgment disposition to those three
claims.





[4]Jamie Thibodeaux is the
wife of appellant Nelson Thibodeaux. 
Nelson gained a proxy through Jamie=s shares to vote about matters related to AAT=s business.





[5]Garey ran AAT=s business because,
according to Nowik, Garey had prior experience in the communications business.





[6]The BBS was an electronic
interface between USLD and its resale company customers.  It allowed the resale companies to determine
the identities of their active customers.





[7]The record contains a
copy of a 1995 USLD contract with Multimedia; the contract is signed by Garey
as Multimedia=s president.





[8]Nowik testified during a
deposition that Garey=s use of Multimedia as a
third party to contract with USLD to rate AAT=s calls was not part of
AAT=s original business
plan.  In their original petition,
appellants asserted that Garey Ainserted his company, Multimedia, into the
contractual arrangements . . . for no benefit to AAT whatsoever and without
shareholder or director approval.@





[9]USLD never had a direct
contractual relationship with AAT.  In
fact, during a deposition, a USLD executive testified that he did not know that
AAT, not Multimedia, was ultimately reselling its long-distance services until
1998.





[10]According to Nelson
Thibodeaux, by early 1998, AAT had customers in all fifty states and its
billings exceeded $1,000,000 per month.





[11]Appellant Nelson
Thibodeaux did not join in the original petition.





[12]The claims that
appellants asserted against Garey included allegations that he failed to
provide AAT=s shareholders with an
accounting of the business, failed to pay dividends to shareholders, wrongly
used AAT=s funds for his personal
benefit, usurped AAT=s corporate
opportunities, wrongly used Multimedia to overcharge AAT for services obtained
from USLD on AAT=s behalf, and otherwise
improperly managed AAT=s business in several
respects.





[13]USLD attached an
affidavit and business records to its intervention petition allegedly substantiating
the money owed to it by AAT.  While USLD
has obtained a summary judgment on its affirmative claim for the payment of the
debt, that summary judgment is not yet final, and it is not a part of this
appeal.





[14]USLD=s counsel informed the
court that its claims remained pending and that it was not a part of the
settlement.





[15]The practice of switching
a long-distance customer=s service without the
customer=s permission is known as Aslamming.@  In an Order of Forfeiture, the FCC eventually
fined AAT $920,000 for its Aslamming@ practices.





[16]The letter stated that
the demand was being made in lieu of Hold filing a lawsuit against appellees,
and it represented that A[s]uch action is
expressly authorized by AAT under the Security Agreement as a remedy of [Hold]
against the secured assets of AAT.@  It also
explained that Hold would deliver twenty percent of the proceeds from billing
on the call records to the registry of the trial court pending resolution of
the case between appellees and appellants.





[17]Among other facts, the
government asserted that Thompson committed fraud because AAT=s sweepstakes entrants
were not told that their telephone service could be switched or that charges
could apply to such a switch, that AAT falsely told such customers that they
could be switched back to their previous long-distance carriers, and that AAT Ahid the physical location
of its offices@ to avoid customer
complaints.  Nowik testified during his
deposition that his independent business helped AAT gain customers by using
such sweepstakes entries; he stated, however, that his sweepstakes entry forms
complied with the law.





[18]In the remainder of this
opinion, AThibodeaux@ will refer to Nelson
rather than Jamie unless we expressly indicate otherwise.





[19]USLD=s involvement with the
prosecution of Nowik and Thibodeaux is detailed below.





[20]Appellants eventually
amended their petition again to assert claims against Qwest.





[21]Appellants have not
raised any issue on appeal related to their objections to the trial court about
appellees= summary judgment
evidence.  Thus, we will not detail the
substance of those objections.





[22]This is appellants= most recent petition.





[23]On appeal, appellants
challenge only the trial court=s exclusion of portions of Nelson Thibodeaux=s affidavit and the
exhibits attached to that affidavit; they do not challenge the trial court=s exclusion of other
summary judgment evidence that they offered. 
Thus, we will not consider such unchallenged and excluded evidence
(including Garey=s affidavit in its
entirety) in determining the issues raised by this appeal.  See Little v. Needham, 236 S.W.3d 328,
331 (Tex. App.CHouston [1st Dist.] 2007,
no pet.); Inglish v. Prudential Ins. Co. of Am., 928 S.W.2d 702, 706
(Tex. App.CHouston [1st Dist.] 1996,
writ denied) (op. on reh=g).





[24]The severance order
recited that all of appellants= claims against appellees had been fully disposed
of and were final and appealable.





[25]We note that over eight
months passed from the time that USLD made its objections to Thibodeaux=s affidavit to the time
the trial court sustained the objections. 
During that time, appellants did not amend Thibodeaux=s affidavit or file any
documents to provide further detail about USLD=s alleged misrepresentation.  See Tex. R. Civ. P. 166a(f)
(permitting supplementation of affidavits).





[26]Because we hold that the
trial court did not abuse its discretion in its evidentiary decision and that
the exclusion of the italicized portion of Thibodeaux=s affidavit justified the
trial court=s summary judgment
decision on appellants= fraud claim, we decline
to address the other contentions raised by appellees that could support the
trial court=s decision on that claim.





[27]In their brief,
appellants contend (with citations to the record omitted),

 

The USLD/[Hold] Agreement
demonstrates that USLD made a conscious decision to deliver AAT=s call records to an
entity other than AAT, and that none of the funds collected through those
records would be paid to AAT.  Giving the
call records to [Hold] and agreeing that [Hold] would not pay any of the proceeds
to AAT, effectively prevented AAT from identifying and billing its customers. .
. .

 

USLD=s conduct in preventing AAT from identifying and
billing its customers, and its conduct in switching AAT=s customers to another
carrier, proximately caused AAT injury because it could not itself move those
customers to a new carrier and could not, therefore, maintain a business
relationship with them.





[28]We note that Jamie
Thibodeaux testified during her deposition that she had never seen any
contracts executed by AAT and that, to her knowledge, Nelson had not reviewed
any such contracts either.





[29]Because we hold that Nelson
Thibodeaux=s affidavit and the
remaining summary judgment evidence is not sufficient to maintain appellants= tortious interference
claim, we decline to address the other arguments raised by both parties
pertaining to the trial court=s adjudication of that claim.  Also, we express no opinion as to whether
USLD=s actions in relation to
AAT=s billing records and its
customer base could have entitled appellants to relief on any other legal
theories other than tortious interference with contracts.





[30]Appellants attached
excerpts from Barbee=s deposition to
substantiate Barbee=s involvement in
Thibodeaux=s and Nowik=s prosecutions.





[31]Thibodeaux=s affidavit stated that
his charges Aarose out of alleged
fraudulent billings by AAT including the period from July 1998 through 1999.@  Nowik=s affidavit contained a similar statement.  Although appellants= reply brief asserts that
Thibodeaux and Nowik Acould not be guilty of
wiring AAT billing revenues between bank accounts if they never had control of
the company during a time when AAT received billing revenues,@ appellants have not
cited any evidence in the record establishing that the criminal charges against
Thibodeaux and Nowik were limited to the time that USLD and Hold controlled AAT=s billing.  Thus, they have not established that USLD=s agreement with Hold is
material to all of those charges.





[32]Specifically, Eddins=s letter to Barbee
stated,

 

I appreciate your service
of the lawsuit against AAT and others.  I
wish that we could provide, directly to all victims, the documents gathered in
our investigations.  However, I=m sure you are aware that
the law prohibits us from sharing investigative results with private litigants,
even victims.

 

I point out that all
documents obtained by federal authorities during an investigation remain the
property of those from whom received.  We
make efforts to give the owners access to their records needed in connection
with civil lawsuits.

 

Should your client, USLD, desire that you
proceed to obtain the records from the owners, we would always make those
records available to the owners so that our investigation would not hinder
private litigations.